40 So.3d 813 (2010)
Tony ARCE, Appellant,
v.
The WACKENHUT CORPORATION, Appellee.
No. 3D08-3029.
District Court of Appeal of Florida, Third District.
July 7, 2010.
Rehearing Denied August 11, 2010.
*814 Sina Negahbani; James Loren, Plantation, for appellant.
Akerman Senterfitt, and Christine L. Welstead, Angela De Cespedes Wenke and Lauren K. Fernandez, Miami, for appellee.
Before WELLS, SHEPHERD, and CORTIÑAS, JJ.
SHEPHERD, J.
The issue on this appeal is whether a concededly authentic document, purporting to be a transcription by an unidentified employee of the Federal Bureau of Investigation (FBI), of a summary dictated by an unidentified representative of the FBI, of an interview conducted either by that individual or another, is admissible in evidence under the public records exception to the hearsay rule codified in section 90.803(8) of the Florida Statutes (2008). In the balance lies the validity of an adverse summary final judgment suffered by Appellant, the plaintiff in a defamation action filed by him against his former employer, the Wackenhut Corporation, for allegedly falsely maligning him to his prospective employer, the FBI. The trial court held this dispositive piece of evidence was inadmissible. We affirm the decision of the trial court.
The appellant, Tony Arce, resigned from his job with the Wackenhut Corporation on July 22, 2003, four and a half months after being hired. For his first month on the job, Arce was a Metrorail security guard. He then was brought into the office to do background investigations on potential Wackenhut hires. He claims he resigned because he could not abide by what he considered a general lack of quality in the manner in which Wackenhut operated its business. Wackenhut maintains Arce's job performance was substandard. Arce's employment file reflects he was not eligible for rehire.
On March 1, 2004, Arce applied for a position as an investigative specialist with the FBI. The following month he received a "Conditional Job Offer," contingent, inter alia, upon a full background investigation. On June 15, 2004, the FBI mailed a letter to Arce withdrawing its conditional offer. The letter reads in part:
In reaching our decision, information from a variety of sources was considered. These sources include your application for employment, comments obtained during the background investigation, and results of various record checks. In your case, information that was developed concerning your employment history indicates that you may not be suitable for employment with the FBI. The choices between the many qualified candidates are difficult ones, and I regret that we are unable to offer you a more favorable decision.
The letter concluded with advice that Arce could request "specific information" from his employment application file under the provisions of the Freedom of Information Act. In response to Arce's request, the *815 FBI provided him with a portion of his file, which included the disputed document. This document purports to chronicle the results of an unflattering review of Arce's performance as a Wackenhut background investigator, given by the company's Human Resources Manager, Yanir Hill, a month before the FBI's conditional offer of employment was withdrawn. The FBI, as it is incontestably entitled to do as an agency of a sovereign, has refused to respond to any subpoenas seeking a witness to vouch for the substance of the purported transcription. In a deposition taken by counsel for Arce a year and a half after the interview, Hill betrayed a negligible recollection of the interview.
Florida Rule of Civil Procedure 1.510(c) provides that the moving party is entitled to summary judgment as a matter of law where "the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact." In Florida, a movant for summary judgment has the initial burden of demonstrating the nonexistence of any genuine issue of material fact. See Valderrama v. Portfolio Recovery Assocs., LLC, 972 So.2d 239 (Fla. 3d DCA 2007).
Once competent evidence to support the motion has been tendered, the opposing party must come forward with admissible counter-evidence sufficient to reveal a genuine issue of material fact. See Fla. R. Civ. P. 1.510; Michel v. Merrill Stevens Dry Dock Co., 554 So.2d 593, 596 (Fla. 3d DCA 1989). Arce argues the disputed document in this case is that counter-evidence. We respectfully disagree.
The transcription on which Arce relies to create an issue of fact is, in fact, an inadmissible hearsay statement unless an exception applies. See § 90.801(c), Fla. Stat. (2008) ("`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").[1] Arce concedes that unless the transcription meets an exception to the hearsay rule, it is inadmissible and summary judgment was appropriately entered. The only exception argued by Arce is the public records exception codified in section 90.803(8).[2] The exception states in relevant part:
Public records and reports.Records, reports, statements reduced to writing or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness.
§ 90.803(8), Fla. Stat.
"Under this provision, two types of public records and reports are admissible into evidence: (1) records setting forth *816 `the activities of the office or agency'; and (2) records of a public office or agency which set forth `matters observed pursuant to a duty imposed by law as to which matters there was a duty to report.'" Lee v. Dep't of Health & Rehab. Servs., 698 So.2d 1194, 1201 (Fla.1997) (citing Charles W. Ehrhardt, Florida Evidence § 803.8 (1996 ed.)). "In adopting this exception," our High Court has explained, "Florida specifically excluded a third type of record that is admissible under the corresponding federal rule: that is, `a record setting forth factual findings resulting from an investigation made pursuant to an authority granted by law.'" Lee, 698 So.2d at 1201. Accordingly, the Court continued, "Records that rely on information supplied by outside sources or that contain evaluations or statements of opinion by a public official are inadmissible under this provision." Id. The disputed document for which an exception is sought in this case falls squarely into this excluded category. Thus, as our supreme court stated in Lee, "In Florida, rather than offering this type of record, a witness must be called who has personal knowledge of the facts." Id.
Arce argues, in the alternative, that summary judgment was entered prematurely because he was not given sufficient time to obtain a certificate of authenticity for the disputed document pursuant to section 90.902 of the Florida Evidence Code.[3] It appears that Arce believes either that a federal authentication of the document will ipso facto make the document admissible, or that Arce may be able to persuade the FBI to include something additional in the certification that will make the document admissible into evidence. Arce again errs, first by making the common legal error of conflating authenticity of a document with admissibility, see Ehrhardt, at § 902.1 ("Even after a document is authenticated, it will not be admitted if another exclusionary rule is applicable."), and second, in his belief that by the FBI inserting some requisite words, the document will become admissible under the public records exception to the hearsay rule. See Lee, 698 So.2d at 1201 (requiring a witness who has personal knowledge of the facts to testify).
We express some degree of sympathy for Arce. He might have been legally maligned by his former employer to the FBI. That also might have been the reason his conditional offer of employment was withdrawn. The FBI says it receives so many requests for information each year that it cannot be bothered to produce a witness at some convenient time to either assist one of the citizens it serves, or dispel his belief concerning why he did not get the job. Absent a witness, Arce's case is lost. As an agent of the sovereign, the FBI has every right to behave in such a way as to deliver this result. However, it strikes us that this action is uncharacteristic of the "Government of the People, by the People and For the People," famously *817 envisioned by Abraham Lincoln in his Gettysburg address over 140 years ago.
Affirmed.
WELLS, J., concurs.
CORTIÑAS, J., (dissenting).
Tony Arce never had a chance. Not versus The Wackenhut Corporation. Not against the Federal Bureau of Investigation. Not even in court.
The facts are simple. Tony Arce worked at The Wackenhut Corporation as a background investigator. In 2003, Arce gave Wackenhut two-weeks notice that he was leaving his job. Arce had never been reprimanded at Wackenhut. Nevertheless, a mere three days before the end of his two-week notice period, Wackenhut reprimanded Arce for supposed sub-standard performance throughout the duration of his employment. Ah, a hail mary[4] reprimand. Sensing the hostility in the belated reprimand, Arce submitted a second resignation letter ending his employment on that same day.
In early March 2004, Arce submitted an application for employment with the Federal Bureau of Investigation. He received a conditional offer of employment from the FBI, subject to his passing a drug test, a polygraph test, and a background check. Arce passed the drug test and the polygraph test.
However, as part of the background check, the FBI contacted Wackenhut and, in mid-May 2004, spoke to Yanir Hill regarding Arce's employment. Hill represented to the FBI that she was Arce's supervisor and that Arce supposedly "worked under her direction to conduct background investigations."[5] The Hill Transcript contained assertions that Arce "was not thorough" in conducting his investigations and that "[h]e would often not do criminal checks in some of the cities and counties where the applicants had lived" and that he "reported that he had done neighborhood investigations and had not done them." Arce was further described as having "a very short fuse," "not tak[ing] any corrective criticism," "talk[ing] too much while he was at work," "not work[ing] well under any form of stress," and "on several occasions . . . set[ting] his own flexible hours without getting permission." The Hill Transcript additionally stated that Arce "put in a required two-week notice[,] but quit two days later with no explanation," thus leaving Wackenhut "in a bind to quickly find someone to finish the background investigations." Of course, Wackenhut neglected to tell the FBI that they decided to reprimand Mr. Arce three days before the end of his two-week notice period, thus prompting him to leave earlier than he had planned. Ultimately, Wackenhut described Arce as "not eligible for rehire" and "not perform[ing] as was required in the position as a background investigator for . . . Wackenhut."
Not at all surprisingly, with such a glowing recommendation from Wackenhut, it *818 took the FBI less than thirty days to rescind their job offer while noting that "[i]n [Arce's] case, information that was developed concerning [his] employment history indicates that [he] would not be suitable for employment with the FBI."
Based upon the Hill Transcript and finding no other negative information in the FBI Records pertaining to his background check, Tony Arce filed a complaint against Wackenhut alleging tortious interference with an employment contract and business relationship and defamation. The complaint was later amended to seek punitive damages and was noticed for trial. Arce then went to court.[6]
The record demonstrates that Arce attempted to subpoena individuals within the FBI to testify as to whether the comments made by Hill contributed to the recission of the FBI's conditional offer. The FBI objected to all such subpoenas and the testimony sought therein and exchanged correspondence with Arce regarding same. One of the letters received from the FBI specified that "if the court demands a written certification from the FBI for you to introduce as evidence the relevant documents Mr. Arce received through his FOIA request, the FBI would be willing to provide one." Arce attempted to obtain certification from the FBI. While Arce was in the process of doing so, Wackenhut filed a renewed motion for summary judgment and motion in limine to exclude the FBI Reports as inadmissible hearsay. Following a hearing in June 2008, the motion for summary judgment was denied, and the case was apparently removed from the trial calendar; however, the record is unclear as to the disposition of Wackenhut's motion in limine at that time.[7] After further communication with the FBI, Arce received another letter (the "July 2008 FBI Letter") specifying that Arce had not demonstrated his exploration of less burdensome alternatives to obtaining certification and that:
[I]n the vast majority of such cases, the parties are able to reach a stipulation to allow FBI documents to be admitted without placing an additional burden on the FBI. There is no indication that you have attempted any such stipulation with the other party/ies to the litigation. . . . it is not clear whether, or why, the court would refuse to accept the cover letter typically sent to recipients of FOIA releases in lieu of imposing additional burdens on the government, or whether you have even explored that question.
(Emphasis added). Moreover, while noting that the certification requirements sought by Arce pursuant to sections 90.803(8) and 90.902, Florida Statutes, would be unduly burdensome, the FBI further stated that Arce
[Had] given [the FBI] no indication that the court is in fact requiring the burdensome certification that [Arce was] demanding or that [Arce has] attempted any of a number of possible avenues which would be less burdensome to the government. For all the above reasons, we cannot provide you with the confirmation you are seeking.
Following receipt of the FBI letter, Arce attempted to secure a stipulation from *819 Wackenhut as to the authenticity of the FBI Records. Wackenhut, in turn, unequivocally stated on more than one occasion that it "will not so stipulate." Despite being aware that Arce was attempting to secure certification from the FBI, Wackenhut re-noticed the matter for trial shortly after Arce's receipt of the July 2008 FBI Letter, and the matter was set for trial in early November 2008. The railroading of plaintiff's case had commenced. Arce thereafter filed a motion in limine to have the trial court issue an order specifying the certification required for the FBI Records to be admitted into evidence. The motion in limine also requested that the trial court again remove the action from the trial calendar.
It appears that Arce attempted to set his motion in limine for hearing on a motion calendar, but the matter was eventually removed because the trial judge would not hear motions in limine during his motion calendar. In late October 2008, shortly before the re-scheduled trial was to commence, the trial court heard arguments as to Wackenhut's and Arce's motions in limine (the "October 2008 Hearing").[8] Without the trial court's order requiring Arce to obtain certification from the FBI, which was a mere formality which the FBI had required prior to certifying the documents, Arce was not able to have the FBI records certified, much less admitted as evidence. The trial court then granted Wackenhut's motion and "precluded [Arce] from advancing any arguments, introducing any evidence or testimony, or relating to or referring to in any way for any purpose, any of the FBI documents or the contents thereof attached to Wackenhut's Motion in Limine. . . during the trial of this action." Following the exclusion of the evidence that essentially formed the basis for Arce's allegations, the trial court entered summary judgment. The railroading of Tony Arce's case was now complete.
Mr. Arce then appealed the orders granting summary judgment and Wackenhut's motion in limine. At or about the same time that Arce filed his notice of appeal, the trial court entered an order denying Arce's motion in limine. While Arce's appeal was pending, the trial court entered a final judgment in favor of Wackenhut. Arce then amended his notice of appeal to include the final judgment.
At issue in this appeal is the trial court's granting of Wackenhut's motion in limine as it is the lynchpin to the survival of the summary and final judgments. A ruling on the admissibility of evidence is reviewed for abuse of discretion. See M.S. v. Dep't of Children and Families, 6 So.3d 102, 103-04 (Fla. 4th DCA 2009) (citing Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001)); see also H&H Electric, Inc. v. Lopez, 967 So.2d 345, 347 (Fla. 3d DCA 2007). At the October 2008 Hearing, Arce clearly alerted the trial court to the existence of his motion seeking a directive from the court as to the certification required from the FBI. Given the correspondence from the FBI demonstrating at least some degree of willingness to provide certification if so specified by court order, the trial court unquestionably abused its discretion by not providing such an order. Absent an actual order from the trial court, it is impossible to conclusively determine whether the FBI would have provided a certification to the trial court's satisfaction. *820 What is clear is that the FBI would not certify the records without a court order that was unreasonably withheld.
Specifically, section 90.803, Florida Statutes, provides, in pertinent part:
Hearsay exceptions; availability of declarant immaterial.The provision of s. 90.082 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY.
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
. . . .
(c) A party intending to offer evidence under paragraph (a) by means of a certification or declaration shall serve reasonable written notice of that intention upon every other party and shall make the evidence available for inspection sufficiently in advance of its offer in evidence to provide to any other party a fair opportunity to challenge the admissibility of the evidence.
(Emphasis added). Section 90.902(11), Florida Statutes, provides:
(11) An original or a duplicate of evidence that would be admissible under s. 90.803(6), which is maintained in a foreign country or domestic location and is accompanied by a certification or declaration from the custodian of the records or another qualified person certifying or declaring that the record:
(a) Was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters;
(b) Was kept in the course of the regularly conducted activity; and
(c) Was made as a regular practice in the course of the regularly conducted activity[.]
(Emphasis added).
If Arce were to comply with certification requirements, the FBI Records would likely be admissible under the exception set forth in section 90.803(6), because they are records of "acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge," in this case memorializing the statements made by Wackenhut's representative during the FBI's background investigation, which in light of its hiring procedures was in "the course of a regularly conducted business activity and. . . it was the regular practice of that business activity to make such memorandum, report, record, or data compilation. . ." See § 90.803(6), Fla. Stat. Given the importance of this potentially admissible evidence to appellant's case, the trial court erred by granting Wackenhut's motion precluding the introduction of the FBI *821 Records into evidence and denying Arce's motion for an order outlining the manner of certification required by the trial court.
Wackenhut further argues that even if the FBI Report is not inadmissible hearsay, any statements made by Hill are protected under section 768.095, Florida Statutes, which provides:
An employer who discloses information about a former or current employee to a prospective employer of the former or current employee upon request of the prospective employer or of the former or current employee is immune from civil liability for such disclosure or its consequences unless it is shown by clear and convincing evidence that the information disclosed by the former or current employer was knowingly false or violated any civil right of the former or current employee protected under chapter 760.
(Emphasis added).
Wackenhut also asserts that even if the FBI Report is admissible as evidence, Hill's statements are similarly protected by section 943.134(2)(a), Florida Statutes, which states:
When a law enforcement officer, correctional officer, or correctional probation officer, or an agent thereof, is conducting a background investigation of an applicant for temporary or permanent employment or appointment as a full-time, part-time, or auxiliary law enforcement officer, correctional officer, or correctional probation officer with an employing agency, the applicant's current or former employer, or the employer's agent, shall provide to the officer or his or her agent conducting the background investigation employment information concerning the applicant. The investigating officer or his or her agent must present to the employer from whom the information is being sought credentials demonstrating the investigating officer's employment with the employing agency and an authorization form for release of information which is designed and approved by the Criminal Justice Standards and Training Commission.
. . . .
(5) An employer who discloses employment information under this section is immune from civil liability for such disclosure or its consequences as provided in s. 768.095.
Section 768.095 clearly excepts information disclosed by the former employer that is knowingly false. The record in this case demonstrates inconsistencies between the assertions in the Hill Transcript and the testimony given by Hill and Esquivel. These inconsistencies create genuine issues of material fact and therefore preclude summary judgment. See Sbory v. Am. Optical Corp., 958 So.2d 474, 475-76 (Fla. 4th DCA 2007); see also Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Moreover, any questions regarding the veracity of the statements in the Hill Transcript, would be within the province of the finder of fact and raise genuine issues of material fact sufficient to preclude summary judgment.
For the foregoing reasons, I would reverse the orders granting Wackenhut's motion in limine and denying Arce's motion in limine, and consequently reverse the summary and final judgments entered in favor of Wackenhut.
NOTES
[1] In reality, the document offered by Arce is triple hearsaythe first being the interview, the second being the dictation of the summary of the interview, and finally, the transcription.
[2] Arce has expressly rejected, both here and below, reliance upon any other hearsay exception in this case, includingmost emphaticallythe business records exception. A court's promise of strict neutrality among those who place their confidence in it for resolution of their differences counsels us against consideration of a ground for a decision that a contestantin this case, Arcehas expressly stated he does not wish to be considered. See State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613, 615 (1939) ("[E]very litigant is entitled to nothing less than the cold neutrality of an impartial [court].").
[3] This section of the Florida evidence code reads as follows in pertinent part:

90.902. Self-authentication
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required for:
(1) A document bearing:
(a) A seal purporting to be that of the United States or any state, district, commonwealth, territory, or insular possession thereof; the Panama Canal Zone; the Trust Territory of the Pacific Islands; or a court, political subdivision, department, officer, or agency of any of them; and
(b) A signature by the custodian of the document attesting to the authenticity of the seal.
(2) A document not bearing a seal but purporting to bear a signature of an officer or employee of any entity listed in subsection (1), affixed in the officer's or employee's official capacity.
[4] A pass or play in American football referring to a very long forward pass or long bomb in desperation with only a small chance of success, especially one thrown at or near the end of the game.
[5] Pursuant to a request under the Freedom of Information Act ("FOIA"), Arce obtained a transcript of the information compiled by the FBI pertaining to his employment background (the "FBI Records"), including a transcript of the information relayed to the FBI by Hill (the "Hill Transcript"). In this record, there is even conflicting evidence on whether or not Ms. Hill was Mr. Arce's supervisor. For example, in the deposition testimony from Eddy Esquivel, a Wackenhut employee, conflicts with the description of Hill as Arce's supervisor.
[6] See Koch Jr., Howard W. (Executive Producer), & Hoblit, Gregory (Director). (1996). Primal Fear [Motion Picture]. United States: Paramount Pictures.
[7] Arce had filed a notice of trial in December 2007, and pursuant to the trial court's order, the case was set for trial in April 2008 and later continued to June 2008. At the June 2008 hearing on Wackenhut's motion for summary judgment, the case was apparently removed from the trial calendar.
[8] The record does not contain the notices of hearing, so it is unclear exactly what was set for hearing before the court. Based upon the transcript of the October 2008 Hearing, it appears that Wackenhut's motion in limine was to be heard, but Arce advised the court of the nature of his own motion in limine and the reason it was taken off the motion calendar.